# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2022

Lyle W. Cayce
Clerk

No. 20-20237

VITOL, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

UNITED STATES OF AMERICA,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2275

Before KING, ELROD, and WILLETT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

This interlocutory appeal poses a statutory-interpretation question of first impression: Is butane a "liquefied petroleum gas" (LPG) under 26 U.S.C. § 6426(d)(2)? Vitol claims that butane is an LPG and therefore an "alternative fuel" that can be mixed with a "taxable fuel" to qualify for the tax credit under § 6426(e). On these grounds, Vitol sued the United States in federal court, seeking an $8.8 million tax refund. Vitol moved for partial summary judgment on whether butane is an LPG under 26 U.S.C. § 6426(d)(2). The trial court denied the motion, concluding that butane is

not an LPG under 26 U.S.C. § 6426(d)(2), but certified its order for interlocutory appeal.

Vitol argues that the common understanding of LPG includes butane—game over. The term LPG, however, as used in § 6426(d)(2)'s definition of alternative fuel, fits within a broader statutory scheme that precludes any taxable fuel from also qualifying as an alternative fuel. And butane is a taxable fuel under that same statutory scheme. Text cannot be divorced from context, and statutory meaning is not always common meaning. Congress's words must be read as part of a contextual whole. We affirm the denial of partial summary judgment and conclude that butane is not an LPG under § 6426(d)(2).

## I. Background

### A.    Factual and Procedural Background

The parties do agree on the facts. Vitol sued the United States for a tax refund of $8.8 million, claiming that the IRS should have allowed a tax credit under 26 U.S.C. § 6426(e) for fuel blended with butane, a product Vitol introduced in 2013. Vitol argues that butane is a "liquefied petroleum gas" under § 6426(d)(2) and therefore an "alternative fuel" eligible for the § 6426(e) credit when mixed with a "taxable fuel." The United States argues that butane is a "taxable fuel" and therefore not an eligible "alternative fuel."

Vitol sought partial summary judgment on the legal issue of whether butane is an LPG under § 6426(d)(2). The magistrate judge recommended that the district court deny the motion, concluding that butane was not an LPG under § 6426. The district court adopted the magistrate judge's recommendations, overruling Vitol's objections. The district court granted

Vitol's request to certify the order for interlocutory appeal and stayed the case.[1] We granted Vitol's motion for leave to file an interlocutory appeal.

## B.    Statutory and Regulatory Framework

The tax code imposes excise taxes on fuel.[2] Two of those code provisions matter here, each involving a web of statutory and regulatory definitions. First, § 4081 imposes an excise tax on "taxable fuels," defined at § 4083 to mean "(A) gasoline, (B) diesel fuel, and (C) kerosene." The term "gasoline" is further defined to include "gasoline blend[s]" and, "to the extent prescribed in regulations," "any gasoline blend stock" that is a "petroleum product component of gasoline."[3] The regulations include twenty-four examples of "[g]asoline blendstocks," one of which is butane.[4]

Second, § 4041(a)(2)(A) imposes an excise tax on "alternative fuels," defined there as "any liquid[, ]other than gas oil, fuel oil, or any product taxable under section 4081."[5] Regulations referencing § 4041(a)(2)(A) describe alternative fuel as follows: "(1) Except as provided in paragraph . . . (2) of this section," alternative fuel "means any liquid fuel," which includes "[a]ny liquefied petroleum gas (such as propane, butane, pentane, or mixtures of the

---

[1] For purposes of this opinion, the "trial court" refers to the conclusions of the magistrate judge as adopted by the district judge.

[2] 26 U.S.C. §§ 4041, 4081. Unless otherwise indicated, the statutory and regulatory provisions are those in effect during the year 2013, the first year for which Vitol claims the credit. This corresponds to the 2012 version of the U.S. Code and the April 1, 2012 edition of the Code of Federal Regulations.

[3] 26 U.S.C. § 4083(a)(2).

[4] 26 C.F.R. § 48.4081–1(c)(3)(i)(B) ("provid[ing] definitions for purposes of the tax on taxable fuel imposed by section 4081"). The regulation uses the term "blendstock," *id.*, while statute uses the term "blend stock," 26 U.S.C. § 4083(a)(2)(B)(i). The parties have not indicated this difference is material, so we do not address it.

[5] The term "special motor fuel" appears throughout the relevant statutes and regulations. The parties agree that this is a predecessor term for "alternative fuel."

same)."[6] Paragraph (2) of that section reiterates that alternative fuel "does not include any product taxable under the provisions of section 4081."[7]

The above provisions impose taxes, as summarized here:

**TAX-IMPOSING PROVISIONS**



The tax code also provides credits reducing those § 4081 and § 4041(a)(2)(A) excise taxes, for fuel that is made from certain components.[8] The § 4041 tax for alternative fuel can be reduced by the alternative fuel credit at § 6426(d). The § 4081 tax for taxable fuel can be reduced by the alternative fuel mixture credit at § 6426(e), for fuel that is "a mixture of

---

[6] 26 C.F.R. § 48.4041–8(f)(1).

[7] *Id.* § 48.4041–8(f)(2).

[8] 26 U.S.C. § 6426.

alternative fuel and taxable fuel."[9] (Vitol seeks that § 6426(e) credit here.) The definition of "alternative fuel," for purposes of § 6426(d) and (e), comes from § 6426(d):

> For purposes of this section, the term "alternative fuel" means—
>
> (A) liquefied petroleum gas,
>
> (B) P Series Fuels (as defined by the Secretary of Energy under section 13211(2) of title 42, United States Code),
>
> (C) compressed or liquefied natural gas,
>
> (D) liquefied hydrogen,
>
> (E) any liquid fuel which meets the requirements of paragraph (4) and which is derived from coal (including peat) through the Fischer-Tropsch process,
>
> (F) compressed or liquefied gas derived from biomass (as defined in section 45K(c)(3)), and
>
> (G) liquid fuel derived from biomass (as defined in section 45K(c)(3)).
>
> Such term does not include ethanol, methanol, biodiesel, or any fuel (including lignin, wood residues, or spent pulping liquors) derived from the production of paper or pulp.

The definition of "taxable fuel," for § 6426(e) purposes, incorporates by reference "subparagraph (A), (B), or (C) of section 4083(a)(1)."

---

[9] 26 U.S.C. § 6426(a)(1) (providing that the credit at subsection (e) runs "against the tax imposed by section 4081").

These provisions reducing taxes can be summarized as follows:

**TAX-CREDIT PROVISIONS**



As discussed above, § 4083 defines taxable fuel to mean gasoline, including gasoline blend stocks as provided by regulation (one of which lists butane as an example).

## II. JURISDICTION

The trial court had jurisdiction under 28 U.S.C. § 1346(a) and 26 U.S.C. § 7422. We accepted interlocutory appellate jurisdiction under 28 U.S.C. § 1292(b) based on the certification of the trial court.

## III. STANDARD OF REVIEW

The parties agree that the standard of review is de novo. Vitol argues on reply that this is not an appeal from a grant of summary judgment, susceptible of affirmance on any grounds supported by the record; rather, our review on interlocutory appeal is limited to questions material to the trial court's order. The import of this argument is unclear—the order on appeal is a denial of partial summary judgment. But we can disregard it, given the

parties' agreement and precedent stating that "statutory interpretation of the Internal Revenue Code . . . is a matter of law that we review de novo."[10]

## IV. Discussion

For the following reasons, the plain language of the statute, taken in context, excludes butane from the definition of a liquefied petroleum gas under § 6426(d)(2). Therefore, we AFFIRM the denial of partial summary judgment. Relying on the statute's plain language, we need not and do not address the absurdity canon, Revenue Ruling 2018–2, or Vitol's affidavit.

We begin with some housekeeping items:

First, we apply the standard tools of statutory interpretation in their proper order. The United States begins by urging us to construe the credit narrowly because tax credits are a matter of legislative grace. But that's not the right order. The narrow construction of tax breaks is a *substantive* canon of statutory interpretation.[11] And "substantive canons of construction are not applied at the outset of textual inquiry."[12] "Why? Because a substantive canon (and the social policy it enhances) can never defeat concrete text (and the congressional policy it enshrines)."[13] Therefore, only if we determine that a statute is ambiguous—that is, "after plain meaning and application of

---

[10] *Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018).

[11] *See* Lawrence Zelenak, *The Court and the Code: A Response to the Warp and Woof of Statutory Interpretation*, 58 Duke L.J. 1783, 1789 (2009) (referring to this rule as a substantive canon).

[12] *Thomas v. Reeves*, 961 F.3d 800, 820 (5th Cir. 2020) (Willett, J., concurring).

[13] *Id.* (relying on then-professor Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 117 (2010)).

the interpretive canons are found lacking"—"do the so-called substantive canons . . . come into play."[14]

Second, we need not consider legislative history or abstract congressional purpose. "The truest indication of what Congress intended is what Congress enacted."[15] The United States makes several arguments invoking legislative history, including some that postdates the statute in question, and both parties argue that their interpretations of the statute best serve the statute's purpose. We decline to consider the legislative history, not least because the United States relies heavily on *subsequent* legislative history, which is deemed unauthoritative even by judges who consider legislative history.[16]

Having set the textual table, we begin "by examining the plain language" of the statute,[17] the words Congress chose.[18] We assume that the plain meaning of those words is the same as their ordinary (*i.e.*, "common"

---

[14] *Id.* at 815.

[15] *Thomas*, 961 F.3d at 826 (Willett, J., concurring).

[16] *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 298 (2010) (Stevens, J.) ("Needless to say, this letter does not qualify as legislative 'history,' given that it was written 13 years after the amendments were enacted. It is consequently of scant or no value for our purposes."); *accord Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185 (1994) (Kennedy, J.) ("[T]he interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute."); *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring in part) ("Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote.").

[17] *Schaeffler*, 889 F.3d at 242.

[18] *Thomas*, 961 F.3d at 810 (Willett, J., concurring).

or "natural") meaning,[19] which is often derived from dictionaries.[20] Of course, this assumption is not set in stone and yields when (1) the statute provides another definition,[21] or (2) when the ordinary meaning is incompatible with the statutory context.[22]

Based on the statutory text and context, we conclude that butane is not an LPG under § 6426(d)(2). Although the common meaning of LPG includes butane, § 6426(d)(2) is a subsidiary part of a broader statutory framework that treats a given fuel as either a taxable fuel or an alternative fuel, but not both. Section 6426 separates taxable fuels and alternative fuels using two distinct subparts. And in those subparts, § 6426 expressly references the structural relationships between its credits and the taxes they offset, imposed at § 4081 and § 4041. And those provisions, in turn, define alternative fuels to exclude any taxable fuel. Thus, the statutory framework is mutually exclusive: A given fuel is either taxable or alternative, but not both. The statutory context of § 6426 provides sound reason to depart from butane's common meaning.

The rest is downhill. Section 4083 defines butane as a taxable fuel for purposes of the excise tax imposed at § 4081. If butane is a taxable fuel, it

---

[19] *Yates v. United States*, 574 U.S. 528, 535 (2015) (referring to ordinary or natural meaning as "its dictionary definition").

[20] *Schaeffler*, 889 F.3d at 242 ("[T]he words of the statute . . . are assumed to carry their ordinary meaning.").

[21] *FCC v. AT & T Inc.*, 562 U.S. 397, 403 (2011).

[22] *Yates*, 574 U.S. at 537 ("[T]he plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." (alterations omitted)).

cannot be an alternative fuel; therefore, butane is not an LPG under
§ 6426(d)(2).

Vitol's arguments and counterexamples do not unseat this conclusion.

## A.    Text and ordinary meaning

To start off, Congress wrote the words "liquefied petroleum gas."
And the ordinary meaning of LPG, the parties agree, includes butane.
Accordingly, unless one of the two assumption-defeating options (statutory
definition or statutory context) overcomes it, the plain meaning of LPG
includes butane under § 6426(d)(2). We conclude that no statutory
definition overcomes ordinary meaning here, but statutory context does.

## B.    Statutory definition

As for the first assumption-defeating possibility, a statutory definition,
§ 6426(d)(2) does not define the term "liquefied petroleum gas," nor does a
statutory definition appear in the other subsections of § 6426.

But wait, the United States argues: We should treat LPG *as if* it's
statutorily defined because its common meaning "conflicts with the statutory
or regulatory definition of related terms." The United States provides no
authority for the principle that a statutory term may be statutorily defined—
and its common meaning disregarded—by virtue of its relationship with *other*
terms that are statutorily defined. We need not adopt such a principle, or
address the argument in the context of statutory definitions, because it is fully
addressed below, in our analysis of statutory context.[23]

---

[23] *See FCC*, 562 U.S. at 404 ("The construction of statutory language often turns
on context, which certainly may include the definitions of related words." (citation
omitted)).

## C.     Statutory context

The crux of this case is whether the second assumption-defeating principle applies. Unless the "statutory text or context" provides "sound reason" for us "to disregard the ordinary meaning," the assumption holds[24] and the plain meaning of LPG (which includes butane) controls.

The parties' disagreement boils down simply. According to the United States, the term LPG must be interpreted consistently within its broader, mutually exclusive statutory scheme, which treats a given fuel, for tax purposes, as either an "alternative fuel" or a "taxable fuel." According to Vitol, Congress did not expressly exclude butane from qualifying as an LPG under § 6426(d)(2), which would have been necessary because the statutory scheme permits a given fuel to be both a taxable fuel and an alternative fuel.

We conclude that the statutory context of § 6426 forecloses Vitol's position. The credits bestowed by § 6426 are structurally framed within the provisions imposing the taxes in the first instance: § 4081 (taxable fuel) and § 4041 (alternative fuel). In subpart (1), the credit under § 6426(d) is introduced as offsetting the alternative-fuel tax under § 4041. In subpart (2), the credit under § 6426(e) is introduced as offsetting the taxable-fuel tax under § 4083. The separate subparts suggest a cordoning off between taxable fuels and alternative fuels. That suggestion is confirmed by the tax-imposing

---

[24] *Id.* at 407*; accord Buttecali v. United States*, 130 F.2d 172, 174 (5th Cir. 1942) ("In the construction of a statute, language is to be given its common and ordinary meaning unless it appears from the context that a different meaning plainly was intended by the enacting body.")*; cf. also Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012) ("To be sure, the word 'interpreter' can encompass persons who translate documents, but because that is not the ordinary meaning of the word, it does not control unless the context in which the word appears indicates that it does.").

statutes § 6426(a) references, § 4081 and § 4041, which constitute the foundation for the § 6426 credits.

For there to be a § 6426 credit, there must first be a § 4081 or § 4041 tax. And those provisions leave no doubt that a given fuel is excluded from the tax regime for alternative fuels if it qualifies as a taxable fuel. The definition of "alternative fuels" in § 4041(a)(2)(A) is "any liquid[, ]*other than* gas oil, fuel oil, or any product taxable under section 4081."[25] Two provisions emphasize this point, and those provisions appear immediately before and immediately after the regulation that defines alternative fuel.[26] This makes clear that the credit arises from a dichotomous statutory scheme, in which a given fuel is ineligible to be taxed as "alternative" by virtue of being taxed as a taxable fuel.

Nor does the structure of the credits permit a fuel to change identities simply when mixed with something else. The statute sets forth the definition of "alternative fuel" once, in § 6426(d). Subsection (d) provides a credit against a tax that is never imposed on a taxable fuel. And § 6426(e), providing the credit against the § 4081 taxable-fuel tax for mixtures of alternative fuel and taxable fuel, identifies which alternative fuels can render a fuel eligible for the credit by referring back to the same, dichotomous definition already set forth at subsection (d).

---

[25] The term "special motor fuel" appears throughout the relevant statutes and regulations. The parties agree that this is a predecessor term for "alternative fuel."

[26] 26 C.F.R. § 48.4041–8(f)(1) ("(1) Except as provided in paragraph . . . (2) of this section," alternative fuel "means any liquid fuel, including—(i) Any liquefied petroleum gas (such as propane, butane, pentane, or mixtures of the same)."); *id.* § 48.4041–8(f)(2) (explaining that alternative fuel "does not include any product taxable under the provisions of section 4081").

In sum, the statutory context provides that a given fuel is either a taxable fuel or an alternative fuel, but not both.

This rule applies to butane, excluding it from the definition of LPG under § 6426(d)(2) as a taxable fuel within the meaning of the statutory scheme. The parties started out agreeing that butane meets the definition of "taxable fuel" for purposes of this appeal. The parties' briefing appears to differentiate between butane derived from petroleum, and butane derived from natural gas, but the parties have disclaimed any such arguments. In addition, to the extent Vitol is concerned about the effects of this appeal on the credit corresponding to alternative fuel that is not part of a mixture under § 6426(d)—beyond the credit Vitol seeks in this litigation, for alternative fuel mixed with taxable fuel under § 6426(e)—the fault lies with Vitol, who defines the issue certified for appeal as the definition of LPG under § 6426(d)(2), which governs both the neat and mixture credits.

In any event, as provided at the beginning, "taxable fuels" is defined at § 4083 to include "gasoline," which is further defined to include, "to the extent prescribed in regulations," "any gasoline blend stock" that is a "petroleum product component of gasoline."[27] And the regulations list butane as an example of a "[g]asoline blendstock[]."[28] As such, butane is classified as a taxable fuel within a statutory scheme structured as a dichotomy between taxable fuels and alternative fuels. Butane cannot be an LPG under § 6426(d)(2) or an alternative fuel for purposes of either § 6426 credit. The statutory context of LPG—its subsidiary location in a scheme

---

[27] 26 U.S.C. § 4083(a)(2).

[28] Again, the parties have not indicated that any difference between "blendstock" and "blend stock" is material, so we do not address it. *See supra* note 4.

that treats a given fuel as taxable or alternative—provides "sound reason" to depart from the common meaning of LPG in this case.[29]

Vitol's contrary arguments are unpersuasive. Vitol argues that § 4041 expressly excludes fuels taxable under § 4083 to avoid taxing the same barrel twice, a risk that isn't present in § 6246. But whatever its reasons for doing so, Congress imposed the tax using mutually exclusive language, as § 4041 expressly excludes liquids "other than gas oil, fuel oil, or any product taxable under section 4081." The credit expressly joins itself to that mutually exclusive framework, by referencing § 4081 and §4083, by tying distinct credits to each provision in separate subsections, and by providing a singular definition of "alternative fuel."

Vitol argues that the statutory scheme permits a fuel to be both taxable and alternative because the word "mixture" prevents a taxpayer from receiving a credit for using the same fuel as the taxable fuel and the alternative fuel in a product. Butane + butane ≠ mixture, Vitol says, whereas butane + different taxable fuel = mixture. So the definition of the alternative fuel (here, LPG) doesn't need to do that work. As an example, Vitol points to renewable diesel, which the IRS deemed eligible for the neighboring § 6426(c) "biodiesel mixture" tax credit when mixed with a different taxable fuel, even though renewable diesel itself (as a diesel) is a taxable fuel under § 4081.[30] But the better understanding, consistent with the otherwise mutually exclusive statutory scheme, is that renewable diesel is an exception to the rule, so Congress made the exception expressly. And the absence of such an exception for butane, when one exists for renewable diesel, is itself telling under *expressio unius*.

---

[29] *FCC*, 562 U.S. at 407.

[30] Notice 2007-37, 2007-1 C.B. 1003.

Vitol also argues that other fuels are treated as both taxable fuels under § 4081 and alternative fuels under § 6426. Liquid fuels generated from the Fischer-Tropsch process, like gasoline, jet fuel, and diesel fuel, are alternative fuels under § 6426(d)(2), despite falling into the taxable-fuel categories of gasoline, kerosene, and diesel under § 4081. Amicus Valero raises the same argument as to hexane and pentane. This argument is abandoned, as the United States notes.[31] Regardless, as the United States explains, and Vitol does not counter on reply, Vitol fails to demonstrate that these identified examples are in fact taxable fuels under § 4081.

Vitol invokes *expressio unius*, pointing to the "flush language" at the bottom of § 6426(d)(2) that identifies exceptions to that definition of alternative fuel. The list mentions "ethanol, methanol, biodiesel," and fuels "derived from the production of paper or pulp," but the list does not mention butane. As the United States explains, however, none of those substances is expressly defined as a taxable fuel, and butane is. In other words, butane was never eligible for the credit because it was a taxable fuel, so express language saying so would have been redundant. Vitol has another explanation: Congress intended to eliminate double tax credits. And if Congress meant to exclude from § 6426(d)(2) any product taxable under § 4081, Vitol says, Congress would have said so—as it expressly did in § 4041. But this ignores the foundational role of § 4041 in the statutory scheme, and § 6426's subsidiary one. The credit is structurally dependent on the tax itself.

## V. Conclusion

The plain language of the statute does not permit a given substance to be treated as both a taxable fuel and an alternative fuel, which is the treatment

---

[31] *Freeman v. Cty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge.").

Vitol seeks for butane. Although the common meaning of LPG includes butane, that statutory term cannot be divorced from its statutory context. The consistent, mutually exclusive treatment of taxable and alternative fuels provides sound reason that the plain language of the statute departs from that common meaning. Therefore, we AFFIRM.

Jᴇɴɴɪғᴇʀ Wᴀʟᴋᴇʀ Eʟʀᴏᴅ, *Circuit Judge*, dissenting:

This case comes down to ordinary meaning. The government starts with the deck stacked against it, as it concedes that if ordinary meaning controls, it loses. To win, then, the government has to show that Congress meant for a term to mean something other than what everyone reading it thinks it means. That task would be easy if the statute defined the term to mean something else, but here it does not. So the government is left to argue that it is "apparent" that the "statutory context" gives the term some other meaning. The government draws a complicated line of logical inferences to make that argument. But at the end of the day, it makes more sense that Congress meant what it said when it used a term that its primary audience would readily understand.[1] The majority, in my view, was too quick to discard the ordinary meaning, and thus I respectfully dissent.

I.

Start with the "straightforward and easy" route.[2] Vitol wants a tax credit for mixing butane with gasoline. Congress gives a tax credit for the sale or use of "alternative fuel mixture[s]."[3] According to that tax credit provision, the term "alternative fuel mixture" means "a mixture of

---

[1] *See* David S. Louk, *The Audiences of Statutes*, 105 Cornell L. Rev. 137, 142 (2019) ("Too often, [the statutory] drafters' imperative—to identify the audience(s) and provide an effective statutory scheme for the audience(s) to follow and implement—is lost in the judicial interpretive enterprise."); *cf.* Office of the Legislative Counsel, U.S. House of Representatives, 104th Cong., HLC No. 104-1, House Legislative Counsel's Manual on Drafting Style 5 (1995) (instructing legislators to "IDENTIFY THE AUDIENCE.— Decide who is supposed to get the message.").

[2] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012).

[3] 26 U.S.C. § 6426(d)–(e).

alternative fuel . . . and taxable fuel."[4]  The term "alternative fuel" includes "liquefied petroleum gas" (LPG),[5] and the term "taxable fuel" includes "gasoline."[6]  So if butane is an LPG, Vitol deserves a tax credit for mixing butane with gasoline, because alternative fuel plus taxable fuel equals alternative fuel mixture tax credit.  As everyone in the oil and gas industry knows, and as the United States readily concedes, butane is an LPG.  Indeed, the government's own witness testified that "butane is always an LPG."  That should be the end of it: Vitol gets a tax credit.

That butane is a "taxable fuel" in a different regulation (and, by extension, a different provision of the Internal Revenue Code) does not change the analysis.  Section 4081 places an excise tax on the extraction, transfer, or sale of various substances used as fuels.[7]  A "taxable fuel" includes (among others) "gasoline";[8] "gasoline" includes "gasoline blend stock";[9] and a regulation defines butane as one such "gasoline blendstock[]."[10]  What this boils down to: Congress giveth (through a tax credit under section 6426), and Congress taketh away (through an excise tax under sections 4081 and 4083) vis-à-vis the IRS (through regulations promulgated under 26 C.F.R. § 48.4081-1(c)(3)(i)(B)).  Perhaps Congress had good reasons for doing so.[11]  Or perhaps the left hand (Congress) knew

---

[4] 26 U.S.C. § 6426(e)(2).

[5] 26 U.S.C. § 6426(d)(2)(A).

[6] 26 U.S.C. § 4083(a)(1)(A).

[7] 26 U.S.C. § 4081(a)(1)(A)(i)–(iv).

[8] 26 U.S.C. § 4083(a)(1)(A).

[9] 26 U.S.C. § 4083(a)(2)(B).

[10] 26 C.F.R. § 48.4081-1(c)(3)(i)(B).

[11] *See infra* Part III.A.

not what the right hand (the IRS) was doing. But we are not here to identify the most prudent tax policy. That is Congress's job.[12] Here, Vitol may be taxed for its use of butane, but it also can get a tax credit for specific uses of the same. We need not delve any further.

## II.

Now for the "gratuitously roundabout and complex" route taken by the majority opinion.[13] For us to deviate from the ordinary meaning,[14] the government has to establish that Congress either defined the term differently in the statute or that the "statutory context" makes it "apparent" that the term means something other than what everyone thinks it means. *See Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021); *see also FCC v. AT&T, Inc.*, 562 U.S. 397, 407 (2011) (requiring a "sound reason in the statutory text or context to disregard the ordinary meaning"). The best

---

[12] *See Thomas v. Reeves*, 961 F.3d 800, 825 (5th Cir. 2020) (*en banc*) (Willett, J., concurring in the judgment) ("[L]anguage codified by lawmakers is like language coded by programmers. A computer programmer may write faulty code, but the code will perform precisely as written, regardless of what the programmer anticipated. Courts, no less than computers, are bound by what was typed . . . .").

[13] *See* Scalia & Garner at 70 (noting that although interpretation is not always "straightforward and easy," "we should not make it gratuitously roundabout and complex").

[14] *See Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 921 (5th Cir. 2019) (Willett, J.) ("Text is the alpha and omega of the interpretive process. Our precedent demands unswerving fidelity to statutory language, meaning we take lawmakers at their word and presume they meant what they said." (internal quotations and citations omitted)); *United States v. Lauderdale County*, 914 F.3d 960, 964, 968 (5th Cir. 2019) (Elrod, J.) (noting that "statutory interpretation begins and, if possible, ends with the language of the statute" and that appeals to statutory purposes should not be credited if they involve "stretching the ordinary meaning of any words" (internal quotations and citations omitted)); *Schaeffler v. United States*, 889 F.3d 238, 240 (5th Cir. 2018) (King, J.) ("In the absence of any ambiguity, our examination is confined to the words of the statute." (internal quotations and citations omitted)).

evidence that Congress means something other than the ordinary meaning is that it specifically defined the term another way. *See Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776–77 (2018). But it did not do so in the provision here. Thus, the United States has a heavy lift to show that the "statutory context" establishes that butane is not an alternative fuel under the applicable tax-credit provision even though everyone thinks of butane as an LPG.

The government starts by presenting a dichotomy, one that all of its arguments flow from: Under the applicable provisions of the Internal Revenue Code, no fuel can be both a "taxable fuel" and an "alternative fuel." That dichotomy, the government argues, comes from the excise-tax provisions found in 26 U.S.C. § 4041. Section 4041(a)(2) taxes "alternative fuels," and under that section the term "alternative fuels" does not include any fuel taxable under section 4081. 26 U.S.C. § 4041(a)(2). Under the corresponding Department of Treasury regulations, butane is listed as a "gasoline blendstock," so it is considered "gasoline," which is a taxable fuel under section 4801. 26 C.F.R. § 48.4081-1(c)(3)(i)(B). Thus, under these provisions, butane is a "taxable fuel" but not an "alternative fuel." The government's next step is more of a leap. It argues that this mutually exclusive dichotomy from the excise-tax provisions applies just the same to the tax-credit provisions. Because butane is a "taxable fuel" under the excise-tax regulations, it cannot be an "alternative fuel" under the tax-credit statutory provision.

To sum it up, the government argues that "liquefied petroleum gas," a term that is universally understood to include butane, does *not* include butane in the tax-credit provisions in section 6426 because:

(1) an (inapplicable) excise-tax provision, section 4041, says that "alternative fuels" under that provision do not include any "taxable fuels" under section 4081;

(2) the excise-tax provision in section 4081 defines "taxable fuels" to include "gasoline";

(3) section 4083 then defines "gasoline" to include any "gasoline blend stock" as defined by applicable regulations;

(4) the applicable regulations list butane as a "gasoline blendstock";

(5) butane is thus a "taxable fuel[]" and not an "alternative fuel[]" under the excise-tax provisions;

(6) that same dichotomy applies across the applicable tax-credit provisions;

(7) butane therefore cannot be an "alternative fuel" under the alternative fuel mixture tax credit provision; and so,

(8) Vitol is not entitled to a tax credit.

Assume for a moment that the ordinary meaning of "liquefied petroleum gas" is not universally understood by those in the industry to include "butane." All else being equal, the above approach may make sense to lawyers. But given that the ordinary meaning *is* known by everyone in the industry, it must be clear that Congress did *not* use the word the way everyone in the industry understands it. The above approach is simply not enough to show that Congress clearly intended a different meaning.

### III.

Despite the various leaps and stretches necessary to make this argument, the majority opinion adopts it wholesale. But to discard the ordinary meaning, we need a "sound reason," not just something that sounds like a reason. *See FCC*, 562 U.S. at 407. All of the majority opinion's conclusions hinge on the taxable fuel–alternative fuel dichotomy from the excise-tax provisions. But it is not at all "apparent" that such a dichotomy

exists in the tax-credit provisions. *See Camacho*, 993 F.3d at 312 ("When faced with an undefined statutory term, our job is to apply the 'common, ordinary meaning unless a more precise definition is apparent from the statutory context . . . .'" (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018))). And there are ample reasons to think it does not.

## A.

At the most basic level, excise taxes and tax credits do two different things. We do not need to import the definition of "alternative fuels" from the excise-tax provision because the tax-credit provision already defines the term "alternative fuel" to include LPGs. If we were supposed to import the definition from the excise-tax provision, we could expect some kind of textual reference from one to the other. Congress *did* define the term "taxable fuel[s]" in the tax-credit provision (section 6426) by reference to the excise-tax provisions (sections 4081 and 4083). So we know Congress knows how to define by reference; it just did not do so with "alternative fuels."

We would not make the statutory scheme incoherent by recognizing that a term can take different meanings in different provisions.[15] When the

---

[15] Indeed, the U.S. Code is rife with different definitions for "alternative fuel." *See* 26 U.S.C. § 30B(e)(4)(B) (defining "alternative fuel" as "compressed natural gas, liquefied natural gas, liquefied petroleum gas, hydrogen, and any liquid at least 85 percent of the volume of which consists of methanol"); 42 U.S.C. § 16091(a)(2) (defining "alternative fuel" as "liquefied natural gas, compressed natural gas, hydrogen, propane, or biofuels"); *Id.* § 6374(g)(2) (defining "alternative fuel" as "methanol, denatured ethanol, and other alcohols; mixtures containing 85 percent or more (or such other percentage, but not less than 70 percent, as determined by the Secretary, by rule, to provide for requirements relating to cold start, safety, or vehicle functions) by volume of methanol, denatured ethanol, and other alcohols with gasoline or other fuels; natural gas; liquefied petroleum gas; hydrogen; coal-derived liquid fuels; fuels (other than alcohol) derived from biological materials; electricity (including electricity from solar energy); and any other fuel

question is whether the use or sale of a substance is *taxed*, section 4041 tells us whether the substance is an "alternative fuel." That section does not technically define "alternative fuel," but it does identify an excise tax "on any liquid (other than gas oil, fuel oil, or any product taxable under section 4081 . . .)" that, among other things, is sold or used for motor vehicle fuel. 26 U.S.C. § 4041(a)(2). For section 4041, then, an "alternative fuel" that may be taxed primarily means a motor vehicle fuel not already taxed under section 4081. But when the question is one of tax *credits*, section 6426 specifically defines "alternative fuel" differently—by a list of examples that includes LPGs. *Id.* § 6426(d)(2). Again, although section 6426 explicitly refers to section 4083 to define "taxable fuel[s]," *id.* § 6426(b)(4)(B), it *does not* refer to section 4041 to define "alternative fuel[s]." No conflict, and thus no reason to look elsewhere.

Not only is there no conflict, but there are plausible reasons why Congress would treat butane as a "taxable fuel" in one section and an "alternative fuel" in another. The simplest explanation is that sections 4041 and 4081 ensure that a wide swath of fuels may be taxed, and section 6426 enters the picture next and provides offsetting credits for some specific fuels that Congress favors. Perhaps some taxable fuels differ as to energy efficiency or environmental risk. Or maybe Congress wanted to incentivize the use of certain taxable fuels for their economic or ecological benefits compared to others. To put it plainly for this case: Congress may decide butane or other LPGs should be taxed, but also decide that the use of those

the Secretary determines, by rule, is substantially not petroleum and would yield substantial energy security benefits and substantial environmental benefits").

substances, preferable as they are to gasoline, should be incentivized as an alternative.[16]

In any event, it is not up to us to decide whether Congress's choices were right, or even to decide between a range of sensible options. Our task is to determine what the tax-credit provision means when it says "alternative fuel[s]." Congress specified a list that includes "liquefied petroleum gas." Butane is a liquefied petroleum gas. Because it is not "apparent" that Congress meant anything else, we should look no further.

## B.

If Congress meant for the taxable fuel–alternative fuel dichotomy to apply to the tax-credit provisions, we might expect it to be hard to find other examples like butane which, depending on the circumstances, could be categorized as either a taxable substance or as a substance eligible for a tax credit. But examples abound.[17]

---

[16] Purveyors of butane and other LPGs indeed assert that the substances by their nature provide certain benefits. For background: Butane occurs naturally and can be extracted from natural gas deposits or through the oil refining process. When butane is extracted from those substances, it is liquefied, and the resulting product is an LPG. As the industry uses the term, "liquefied petroleum gas" is a category of hydrocarbon-based gasses derived from this extraction process.

The most common LPGs—butane and propane—are much like each other on a molecular level, and those who produce with them claim they have a number of advantages over standard gasoline. First, they are abundant in the United States and, when added to the fuel supply, reduce overall gasoline consumption and dependence on foreign oil sources. Second, LPGs purportedly contain less carbon than gasoline, so they release less carbon into the atmosphere when burned for energy. Indeed, as between propane and butane, butane is the more efficient fuel, and it is also less volatile—that is, it is less likely to escape into the atmosphere during the combustion process. Butane also improves the cold-weather functioning of personal automobiles given its low vapor pressure (relative to propane), which helps with ignition.

[17] The majority opinion briefly concludes this argument was "abandoned, as the United States notes." *Ante* at 15. To support its position, the majority opinion points to

Consider ethyl tertiary butyl ether (ETBE). ETBE is listed as a "gasoline blendstock" by the regulations, which makes it a taxable fuel under the excise-tax provision. *See* 26 C.F.R. § 48.4081-1(c)(3)(i)(F). But despite its taxable-fuel status, it is also eligible for the alcohol fuel mixture credit, which applies to "a mixture of alcohol and a taxable fuel." 26 U.S.C. § 6426(b)(3), (4). Another example is renewable diesel, which is a "diesel fuel," making it a "taxable fuel" under the excise-tax provisions. *See* 26 U.S.C. § 4083(a)(3)(A)(i). But renewable diesel is also treated as biodiesel, which qualifies for the biodiesel mixture credit in the tax-credit provisions. 26 U.S.C. § 40A(f)(1) (directing that renewable diesel should be treated as biodiesel); 26 U.S.C. § 6426(c)(5). The majority opinion responds that "renewable diesel is an exception to the rule" because "Congress made the exception expressly." *Ante* at 14. The same could be said about LPGs: Congress made the exception for LPGs expressly, and butane is by all accounts an LPG. Thus, even if the majority opinion is right about the dichotomous framework, LPGs are just as expressly an "exception" to the framework as renewable diesel fuel.

These examples illustrate that Congress did not intend a harsh taxable fuel–alternative fuel dichotomy. Such a dichotomy cannot explain the statutes' treatment of several substances in addition to butane; numerous

---

*Freeman v. County of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998), for the proposition that a party objecting to a magistrate judge's report waives any legal arguments not made to the magistrate judge initially. *Ante* at 15 & n.31. A review of that case, however, shows that this court was referring to instances in which a party fails to assert a legal argument—an independent ground for victory. *Freeman*, 142 F.3d at 851–53. Vitol's points about the statutory scheme's treatment of other substances is not an independent legal argument or ground for relief. Those points are in service of the core legal argument which Vitol *did* raise to the magistrate judge: that butane is an LPG under section 6426(d). Vitol need not have raised and elaborated on every possible point in support of that argument before the magistrate judge.

substances may be taxed, *and* be the basis for a tax credit, depending on their use.  All things considered, it is not "apparent" that Congress intended the statutory context to override LPG's ordinary meaning.  Thus, there is no "sound reason" to depart from that meaning.

*  *  *

If text is the "alpha and the omega of the interpretive process," *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019), ordinary meaning is the Star of Bethlehem.  We should not stray from it unless Congress has made some other meaning abundantly clear.  Here, virtually everyone agrees that the ordinary meaning of "liquefied petroleum gas" encompasses butane.  At least in this case, the easy answer and the right answer are the same.  Because the majority holds otherwise, I respectfully dissent.